# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ISMAEL CAVAZOS,

       Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No.  1:22-cv-00771-SAB

ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

(ECF Nos. 16, 19)

## I.

## INTRODUCTION

Plaintiff Ismael Cavazos ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Social Security benefits pursuant to Title XVI of the Social Security Act.  Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's brief.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied and

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 7, 8, 10.)

1  Defendant's cross-motion for summary judgment shall be granted.

2  **II.**

3  **BACKGROUND**[2]

4  On August 30, 2019, Plaintiff filed an application for Supplemental Security Income

5  ("SSI") under Title XVI, alleging disability beginning August 30, 2019.[3]  (Admin. Rec. ("AR")

6  176–82, ECF Nos. 11- 1, 11-2.)

7  Plaintiff's claim was initially denied on March 2, 2020, and denied upon reconsideration

8  on May 19, 2020.  (AR 53–63, 63–74, 80–85, 97–92.)  On March 10, 2021, Plaintiff, represented

9  by counsel,[4] appeared via telephonic conference for an administrative hearing before the

10  Administrative Law Judge Roxanne Fuller (the "ALJ").  (AR 30–51.)  Vocational expert ("VE")

11  Jane Beougher also testified at the hearing.  On May 28, 2021, the ALJ issued a decision denying

12  benefits.  (AR 12–29.)  On April 25, 2022, the Appeals Council denied Plaintiff's request for

13  review, making the ALJ's decision the final decision of the Commissioner.  (AR 1–6.)

14  Plaintiff initiated this action in federal court on June 23, 2022, and seeks judicial review of

15  the denial of his application for benefits.  (ECF No. 1.)  The Commissioner lodged the

16  administrative record on September 26, 2022.  (ECF No. 11.)  On January 11, 2023, Plaintiff filed

17  a motion for summary judgment appealing the Commissioner's decision.  (ECF No. 16.)  On

18  April 13, 2023, Defendant filed a cross-motion for summary judgment and brief in opposition to

19  Plaintiff's brief.  (ECF No. 19.)  No reply was filed and the matter is deemed submitted on the

20  pleadings.

21  ///

22
23  [2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

24
25  [3] While Plaintiff's complete medical history (*i.e.*, records of a claimant's medical sources covering at least the 12 months preceding the month in which an application is filed) must be considered for purposes of his application, 20 C.F.R. § 416.912, the Court notes that SSI benefits are not payable prior to the month following the month in which the application was filed, 20 C.F.R. § 416.335, and therefore the ALJ's disability determination is whether Plaintiff was under a disability as of the date the application was filed.

26

27  [4] Plaintiff was represented by attorney Nicholas Martinez during the administrative proceedings.  (See AR 15, 250.) Plaintiff is currently represented by attorney Jonathan O. Pena, of Pena & Bromberg, Attorneys at Law, in the instant matter.  (See ECF No. 16; AR 94–99.)

28

1

**III.**

2

**LEGAL STANDARD**

3

    **A.    The Disability Standard**

4

        To qualify for disability insurance benefits under the Social Security Act, a claimant must

5

show he is unable "to engage in any substantial gainful activity by reason of any medically

6

determinable physical or mental impairment[5] which can be expected to result in death or which

7

has lasted or can be expected to last for a continuous period of not less than 12 months."  42

8

U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation

9

process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[6] Batson v.

10

Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the

11

sequential evaluation in assessing whether the claimant is disabled are:

12

13

        Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

14

15

        Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

16

17

18

        Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

19

20

        Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

21

22

23

        Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

24

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

25

26

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

27

28

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

///

---

[7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1

**B.    Standard of Review**

2        Congress has provided that an individual may obtain judicial review of any final decision

3  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4  determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

5  the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

6  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

7  the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

8  405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

9  evidence which, considering the record as a whole, a reasonable person might accept as adequate

10  to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

11  (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

12  Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

13  the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

14  not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a

15  scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v.

16  CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

17  citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

18  ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

19  454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

20  falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396,

21  409 (2009).

22        Finally, "a reviewing court must consider the entire record as a whole and may not affirm

23  simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

24  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

25  Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may

26  review only the reasons stated by the ALJ in her decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

27  Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

28  this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

5

1    for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

2    the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

3    400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

6        The ALJ conducted the five-step disability analysis and made the following findings of

7    fact and conclusions of law as of the date of the decision, May 28, 2021 (AR 17–25):

8        At step one, the ALJ determined Plaintiff has not engaged in substantial gainful activity

9    since August 30, 2019, the application date.  (AR 17 (citing 20 C.F.R. §§ 416.971 et seq.).)

10       At step two, the ALJ determined Plaintiff has the following severe impairments: chronic

11   obstructive pulmonary disease ("COPD"), otomastoiditis, right ear, substance abuse, depression,

12   and anxiety.  (AR 17–18 (citing 20 C.F.R. § 416.920(c)).)

13       At step three, the ALJ determined Plaintiff does not have an impairment or combination of

14   impairments that meets or medically equals the severity of one of the listed impairments in 20

15   C.F.R. Part 404, Subpart P, Appendix 1 (AR 18–19 (citing 20 C.F.R. §§ 416.920(d); 416.925;

16   416.926).)

17       In reaching this decision, the ALJ considered Plaintiff's severe physical impairments

18   under the listings, specifically Listing 3.02 (chronic respiratory disorders).  However, the ALJ

19   found no evidence of forced expiratory volume less than or equal to the value in Table I-A or I-B

20   for his age, gender, and height; therefore, the ALJ concluded Plaintiff does not meet the listing.

21   The ALJ also considered Listing 2.10 (hearing loss not treated with cochlear implantation), but

22   did not find any evidence of an average air conduction hearing threshold of 90 decibels or greater

23   in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the

24   better ear or a word recognition score of 40% or less in the better ear based on a standardized list

25   of phonetically balanced monosyllabic words; therefore, the ALJ concluded Plaintiff does not

26   meet the listing.

27       The ALJ also considered Plaintiff's mental impairments, and determined they did not

28   meet or medically equal the criteria of Listing 12.04 (depressive, bipolar and related disorders) or

12.06 (anxiety and obsessive-compulsive disorders).  More specifically, the ALJ determined Plaintiff does not satisfy the paragraph B criteria because his limitations in the four broad functional areas are all of mild and moderate severity.[8]  (AR 18–19.)  The ALJ also considered the paragraph C criteria and determined the record does not establish the presence of paragraph C criteria.  (AR 19.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform

> **medium work as defined in 20 CFR 416.967(c) except occasional exposure to irritants such as fumes, odors, dusts, and gases; occasional exposure to poorly ventilated areas; occasional exposure to chemicals; occasional exposure to moving mechanical parts; occasional operating a motor vehicle; occasional exposure to unprotected heights; limited to occupations that do not require fine hearing capability; able to perform routine and repetitive tasks; no interaction with the public and only occasional interaction with co-workers and supervisors.**

(AR 19–24 (citing 20 C.F.R. § 416.929; SSR 16-3p, <u>available at</u> 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR 24 (citing 20 C.F.R. § 416.965).)

At step five, the ALJ noted Plaintiff was born on December 23 1957, and was 61 years old (which is defined as an individual closely approaching retirement age) on the date the application was filed; Plaintiff has a limited education; and transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.  (<u>Id.</u> (citing 20 C.F.R. §§ 416.963; 416.964; 416.968).)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ

---

[8] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  <u>Id.</u>  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  <u>Id.</u>  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  <u>Id.</u>  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  <u>Id.</u>  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  <u>Id.</u>  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  <u>Id.</u>

determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 416.969; 416.969(a)), such as:

- <u>Floor Waxer</u> (Dictionary of Occupational Titles ("DOT") 381.687-034), a medium exertional work position with a specific vocational preparation ("SVP") level of 2, and approximately 15,800 jobs in the national economy; and

- <u>Cleaner Operator</u> (DOT 389.683-010), a medium exertional work position with an SVP of 2, and approximately 13,000 jobs in the national economy.

(AR 24–25; <u>see also</u> AR 48–49 (identifying third job Plaintiff could perform as Hand Packager, DOT 920.587-018, medium exertion, SVP 2, with 41,400 available jobs in the national economy).) With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT. (AR 25.)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, since August 30, 2019, the date the application was filed. (<u>Id.</u> (citing 20 C.F.R. § 416.920(g)).)

## V.

## DISCUSSION

On appeal, Plaintiff purports to raise two challenges to the ALJ's decision: (1) whether logical errors in the assessed RFC compel remand; and (2) whether the ALJ erred in failing to reconcile conflicts between the VE's testimony, the DOT, and the RFC. (ECF No. 16 at 3, 7–10.) The first issue heading, however, is poorly-phrased and does not actually speak to the issue discussed in Plaintiff's brief. Rather, a plain reading of Plaintiff's brief as to this issue reveals the issue Plaintiff truly asserts is whether the ALJ breached a duty to develop the record. (<u>See</u> <u>id.</u> at 7–9.) Accordingly, the Court address the issue as such herein.[9]

---

[9] In addition, the Court notes Plaintiff has not challenged the ALJ's step two and three determinations identifying his severe impairments; the ALJ's evaluation of the medical opinion evidence; the ALJ's discounting of his subjective symptom testimony; he does not raise any challenge related to his mental impairments, but only the physical ones; and, apart from the ALJ's assessment of the hearing limitation, Plaintiff does not challenge the ALJ's RFC determination with respect to his capacity for medium work or any of the other functional limitations. Accordingly, Plaintiff has waived argument with respect to these issues. <u>Lewis</u>, 236 F.3d at 517 n.13; <u>Indep. Towers of Wash. v. Wash.</u>, 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued specifically and distinctly in a party's opening brief.").

**A.     Whether the ALJ had a Duty to Further Develop the Record**

Plaintiff argues that, with respect to the hearing limitations assessed in the RFC, no physician opined that Plaintiff's loss of hearing amounted to a severe impairment (although, as an aside, Plaintiff comments that he does not disagree that his hearing impairment is severe).  (ECF No. 16 at 7–8.)  It appears this is because the hearing test upon which the ALJ relied to assess the hearing limitation in the RFC was completed after the prior administrative findings were issued.  (See id. at 8.)  Because the opining physicians did not review this test, Plaintiff argues the ALJ's duty to develop the record was triggered; that the ALJ's failure to further develop the record— *i.e.*, by obtaining an "independent medical opinion; treating opinion; or function-by-function analysis of the impact of the hearing impairment on Plaintiff's ability to perform work-related activity"—resulted in an RFC determination that is not supported by the record but was instead ascertained by the ALJ's improper interpretation of raw medical data; and that this error was harmful.  (Id. at 8–9.)  Secondarily, Plaintiff argues the hearing test demonstrates progression of his hearing impairment, which also necessitated further development of the record.  (Id. at 9.)  The Court finds these arguments unpersuasive.

1.     Legal Standard

Generally, "[t]he claimant has the burden of proving that [he] is disabled."  Smolen, 80 F.3d at 1288.  However,  "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered … even when the claimant is represented by counsel.'"  Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler (Brown I), 713 F.2d 441, 443 (9th Cir. 1983)).  This is because "Social Security proceedings are inquisitorial rather than adversarial."  Schiaffino v. Saul, 799 Fed. App'x 473, 476 (9th Cir. 2020) (quoting Sims v. Apfel, 530 U.S. 103, 111–12 (2000)).

Nevertheless, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e); 416.912(e)); see also Brown v. Berryhill (Brown II), 697 Fed. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was

9

not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record….").

2.   Analysis

Importantly, the Ninth Circuit has explained that ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.")). Examples of situations under which further developing the record may be required include when the additional evidence needed is not contained in the records of the claimant's medical sources, and when highly technical or specialized medical evidence not available from the claimant's medical sources is needed. 20 C.F.R. § 416.919a(b).

**a.     The Record was Not Ambiguous**

Here, however, the ALJ did not find, nor has Plaintiff established, that the evidence of record was "ambiguous." Though Plaintiff argues the hearing test evaluated by the ALJ was of such a clinical, "raw data" nature that the ALJ was not qualified to interpret it, a plain reading of the record belies this argument. Simply put, the ALJ did not review raw medical data, but an audiology hearing evaluation report that was prepared by audiology consult Molly K. Armstrong (AR 441–43). The ALJ thus properly considered audiologist Armstrong's description of "mild," "moderately severe," and "moderate" hearing loss at different frequencies, to assess a hearing limitation for Plaintiff in the RFC. (AR 21–22 (citing AR 442).)

Further, Plaintiff's position that the ALJ may not review a medical report and incorporate it into the RFC determination without a medical opinion discussing it, is blatantly contradicted by the Regulations, which reserves ultimate determination of the RFC exclusively for the Commissioner. As defined by the Regulations, the RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e); 404.1545(a); 416.945(a); see also Valencia v.

Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2); 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  It therefore falls squarely within the ALJ's province to synthesize the medical evidence, resolve conflicts and ambiguities in the medical testimony, and determine credibility.  See, e.g., Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Tommasetti v. Astrue, 533 F.3d 1035, 1041–42 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").  Hence, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010)); see also Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016) (ALJ need not "parrot … exact descriptions of … limitations" to reach an RFC determination consistent with the medical record and claimant's limitations); Carver v. Colvin, 600 Fed. App'x 616, 620 (10th Cir. 2015) (finding ALJ "sufficiently captured the essence of the Section III functional limitations," despite not repeating limitations as stated in the medical opinions "verbatim"; and commenting, "[t]o conclude otherwise would parse the ALJ's language too finely.").

Indeed, not only does the RFC determination fall exclusively under the ALJ's province, the Regulations and controlling legal authorities *require* an ALJ to evaluate the objective medical evidence in the record.  See 20 C.F.R. § 404.1520b ("After we review all of the evidence relevant to your claim, we make findings about what the evidence shows.").  This necessarily includes consideration of "medical signs" (which are "shown by medically acceptable diagnostic techniques") and "laboratory findings" (including MRIs and x-rays).  See 20 C.F.R. §§

404.1513(a)(1); 404.1502(c) (defining laboratory findings); 404.1502(g) (defining medical signs).

Finally, contrary to Plaintiff's assertions, "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a[n] RFC determination." Bufkin v. Saul, 836 Fed. App'x 578, 579 (9th Cir. 2021).   Rather, in reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008).

In sum, the record was not "ambiguous"; therefore, the duty to further develop the record was not triggered.  Tonapetyan, 242 F.3d at 1150.

### b.      The Record was Not Inadequate

Nor does Plaintiff indicate the record was incomplete in the manner contemplated by the Regulations.   Importantly, after the reconsideration decision was issued, Plaintiff submitted additional evidence; thereafter, at the hearing, his attorney did not object to the hearing proceeding as scheduled (AR 33–34), and he represented to the ALJ that he had reviewed Plaintiff's record and there was "no outstanding evidence" that should be a part of the record (AR 34).  The Ninth Circuit requires claimants who are represented by counsel to "raise all issues and evidence at their administrative hearings in order to preserve them on appeal.  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999).  By representing at the hearing that the record was complete and did not require further development before the ALJ evaluated Plaintiff's claim of disability, Plaintiff did not preserve the issue of developing the record and it was waived.  Id.  On this basis alone, Plaintiff's argument is unavailing.

Furthermore, to the extent Plaintiff suggests the record was deficient and argues the ALJ was required to "further develop" the record in order to flesh out missing treatment records, the Court notes it is Plaintiff's burden to submit evidence and prove he is disabled.  Smolen, 80 F.3d at 1288; see also Meanel, 172 F.3d at 1113 (noting that part of a claimant's burden in proving his disability is that he "must present complete and detailed objective medical reports of [his] condition from licensed medical professionals.") (citations and inner quotation marks omitted). Plaintiff's failure to submit medical records to prove his own disability cannot be imputed to the ALJ as a failure to develop the record where no such duty has been triggered.

To the extent he argues the ALJ was required to further develop the record because there is no physician opinion that reviews and encompasses the post-reconsideration period of medical records (including Plaintiff's hearing test), Plaintiff's argument is unsupported in law. To the contrary, the Court notes that 20 C.F.R. § 404.970, which governs submitting written evidence to an ALJ, expressly provides that all evidence may be provided up to five days prior to the hearing before the ALJ, and permits evidence to be submitted to the ALJ for review after that date (but before the ALJ has issued her decision) under certain circumstances. 20 C.F.R. § 404.970(a)–(b). This regulation necessarily contemplates that medical evidence pertaining to the time period after the reconsideration decision may be reviewed by the ALJ, but does not require the ALJ to obtain another medical opinion to interpret and evaluate those records prior to issuance of her decision. See also 20 C.F.R. § 404.970 (regulation governing when the Appeals Council is obligated to review additional evidence submitted *after* the ALJ issues a decision).

Ninth Circuit caselaw also demonstrates an ALJ does not need to procure an additional physician opinion to review unexamined medical records where the medical notes are unambiguous. Brown II, 697 Fed. App'x at 549; see also Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) (the Ninth Circuit has "routinely considered evidence submitted for the first time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence."); Owen v. Saul, 808 Fed. App'x 421, 423 (9th Cir. 2020) (rejecting similar argument challenging the ALJ's reliance on medical opinions that did not discuss later-obtained medical records, explaining "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no time limit on such a gap in time. At the time they issued their opinions, the non-examining experts had considered all the evidence before them, satisfying the requirements set forth in 20 C.F.R. § 404.1527(c)(3).").  Indeed, the Court notes there is always a gap in time between a non-examining state agency physician's review at the initial and reconsideration levels and the ALJ's subsequent hearing decision, and "claimants routinely continue pursuing care in the interim thereby generating new medical records. If the mere passage of time and presence of additional medical evidence in the record established

ambiguity," then a consultative examination or updated medical opinion would be required in every single Social Security case.  Corwin v. Kijakazi, No. 1:20-cv-00394-GSA, 2021 WL 5771658, at *6 (E.D. Cal. Dec. 6, 2021).

The Court additionally notes Plaintiff suggests that the ALJ should have further developed the record because a doctor *may have* opined that the subsequent medical records supported greater limitations than those set forth in the RFC determination.  This is pure speculation which, at most, suggests Plaintiff seeks to present an alternative, more favorable interpretation of the medical evidence.  But this is not sufficient to establish reversible error, and the Court "will not engage in second-guessing" where the ALJ has supported her findings with substantial evidence from the record.  Thomas, 278 F.3d at 959; Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679; see also Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992) (the court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation).

Finally, a showing of unfairness or prejudice resulting from any failure to develop the record is required for remand, Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997), and Plaintiff has not made this requisite showing.  To the contrary, even while contesting the ALJ's consideration of the hearing test in her RFC formulation, Plaintiff does not dispute the finding that he has a severe hearing impairment, nor does he in any meaningful way challenge the ALJ's functional hearing limitation in the RFC determination.  (See ECF No. 16 at 7 (stating, "Plaintiff does not disagree that the [hearing] impairment is indeed severe, ....").)  Thus, Plaintiff has not met his burden of showing the ALJ was required to further develop the record in this case.  See Graham, 129 F.3d at 1423.  Accordingly, the Court will not disturb the ALJ's decision with respect to her evaluation of the medical record and RFC determination.

**B.      Whether the ALJ Resolved Apparent Conflicts Between the VE's Testimony and the DOT, Pursuant to SSR 00-4p**

As previously noted, the ALJ reached an RFC determination that Plaintiff is capable of medium work, with additional functional restrictions.  (AR 19–20.)  The VE testified Plaintiff was capable of performing jobs such as floor waxer, hand packager, and cleaner operator.  (AR 48–49.)  The ALJ noted Plaintiff was capable of performing work "such as" floor waxer and

cleaner operator in her decision.  (AR 25.)  Plaintiff argues apparent inconsistencies exist between the information listed in the DOT and the ALJ's conclusion that Plaintiff could perform the jobs of floor waxer and cleaner operator, as based on the VE's testimony, that necessitate remand.[10] (ECF No. 16 at 9–10.)

       1.   Legal Standard

As previously noted, at step five, the Commissioner must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations."  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal quotations omitted).  That is, the ALJ must consider potential occupations the claimant may be able to perform, based on the claimant's RFC, age, education and work experience, and the information provided by the DOT and the VE.  See id. at 846; Valentine v. Astrue, 574 F.3d 685, 689 (9th Cir. 2009);  20 C.F.R. § 416.920(g).

"The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."  SSR 00-4p, available at 2000 WL 1898704 (Dec. 4, 2000).  "The term 'occupation,' as used in the DOT, refers to the collective description of those jobs.  Each occupation represents numerous

---

[10] Curiously, Plaintiff only takes issue with the ALJ's findings with respect to the floor waxer and cleaner operator jobs, but does not challenge the VE's testimony that he could also perform the hand packager job.  Presumably, this is because the ALJ's decision only identifies two of the three examples of jobs Plaintiff can perform; however, nothing in the record or the ALJ's decision indicates the ALJ adopted the VE's testimony only with respect to the floor waxer and cleaner operator jobs (indeed, the ALJ states Plaintiff can perform jobs "such as" floor waxer and cleaner operator, which indicates her list was not exhaustive).  The Court acknowledges the ALJ's decision would have been clearer if she had listed in her decision all three jobs to which the VE testified; nonetheless, a comprehensive reading of the record reveals the ALJ accepted the VE's testimony in total, including the VE's testimony as to the three jobs Plaintiff could perform.  See Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012), superseded by regulation on other grounds ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned."); see also Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion," provided "those inferences are there to be drawn").  Plaintiff's failure to challenge the VE's finding as to the hand packager job constitutes a waiver of any argument as to this issue, Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929, which results in a concession that the VE properly identified at least one job existing in the national economy that Plaintiff could perform despite his RFC limitations.  See also Ruiz v. Comm'r of Soc. Sec. Admin., 490 Fed. App'x. 907, 908–09 (9th Cir. 2012) (affirming ALJ's decision to deny benefits and concluding that, because the ALJ listed nine rationale for rejecting the claimant's testimony and the claimant challenged only one of the rationale, the ALJ's conclusion would still be supported by the unchallenged rationale).  Accordingly, even if the ALJ failed to resolve the purported conflicts identified by Plaintiff with respect to the floor waxer and cleaner operator jobs, such error would not affect the ultimate finding of nondisability and is therefore harmless.  Tommasetti, 533 F.3d at 1038.

jobs." Id.; see also Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (noting the DOT is not comprehensive, that "[i]ntroduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a vocational expert is appropriate, even though the job traits may vary from the way the job title is classified in the DOT," and holding "[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.") (citations omitted).   Information about a particular job's requirements may be available from a VE's experience in job placement or career counseling.   SSR 00-4p.   Thus, a VE may be able to provide more specific information about jobs or occupations than the DOT.   Id.; see also Lounsburry, 468 F.3d at 1114.   Accordingly, the ALJ may rely on VE testimony regarding "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy."   Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999); Lockwood v. Comm'r of Soc. Sec., 616 F.3d 1068, 1071 (9th Cir. 2010) (the ALJ can meet the agency's burden of proving that other work exists in significant numbers by the testimony of a VE).

Nonetheless, hypothetical questions posed to the VE must set out all the limitations and restrictions of the particular claimant, as supported by the medical record.   Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).   Where the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy.   20 C.F.R. § 404.1566(b); see Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988).

SSR 00-4p provides that where there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ is required to reconcile the inconsistency; that is, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled.   SSR 00-4p, at *2; see also Johnson, 60 F.3d at 1435 (holding that, if the ALJ relies on a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation.").   "An example of a conflict between the DOT and a VE's testimony is when the DOT's description of a job includes activities a claimant is precluded from doing, and the VE nonetheless testifies that the claimant would be

able to perform that job." Martinez v. Colvin, No. 1:14-cv-1070-SMS, 2015 WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) (citations omitted); see also Zavalin, 778 F.3d at 846 (providing example of apparent conflict as "expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle").  The ALJ must inquire, on the record at the disability hearing, as to whether or not there is such consistency. SSR 00-4p, at *2; Massachi v. Astrue, 486 F.3d 1149, 1153–54 (9th Cir. 2007).  Further, the Social Security Administration ("SSA") notes neither the DOT nor the VE's evidence "automatically 'trumps' when there is a conflict"; rather, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT information.  SSR 00-4p, at *2.

Where the ALJ fails to resolve an apparent inconsistency, the court is left with "a gap in the record that precludes [it] from determining whether the ALJ's decision is supported by substantial evidence."  Zavalin, 778 F.3d at 846; Massachi, 486 F.3d at 1154 ("we cannot determine whether the ALJ properly relied on [the VE's] testimony" due to unresolved occupational evidence).  Nevertheless, a failure to ask the VE whether her testimony conflicts with the DOT may amount to harmless error if there is no conflict, or if the VE provides "sufficient support for her conclusion so as to justify any potential conflicts." Massachi, 486 F.3d at 1154, n.19; see also Hann v. Colvin, No. 12-cv-06234, 2014 WL 1382063, at *15 (N.D. Cal. Mar. 28, 2014).

2.    Analysis

Plaintiff argues his RFC limitations to "occasional" exposure to irritants such as fumes, odors, dust, and gases, chemicals, and moving mechanical parts (AR 19–20), conflict with the DOT's description of the "floor waxer" and "cleaner operator" jobs, as such jobs will "obviously" require significant exposure to fumes, odors, dusts, and chemicals (inherent in cleaning products), and the floor waxer will be required to handle moving machinery (i.e., a floor waxer).  (ECF No. 16 at 10.)  Plaintiff argues this apparent and obvious conflict triggered the ALJ's duty to elicit testimony from the VE to reconcile the conflict, and that the ALJ's failure to do so constitutes reversible error.  (Id.)  The Court finds Plaintiff's arguments unavailing, as follows.

1

**a.      No Conflict Exists Between the DOT and the VE's Testimony**

First, the Court finds there is no apparent conflict between the DOT job requirements for floor waxer and cleaner operator, and the VE's testimony based on Plaintiff's RFC limitations. The DOT provides the following descriptions for the jobs identified by the VE:

A floor waxer:

> Cleans, waxes, and polishes floors by hand or machine: Removes dirt and blemishes from floor, using various cleaning solvents and compounds, according to composition of floor.   Applies paste or liquid wax to floor with rags or machine.   Polishes floor with electric polishing machine or weighted brush.

Waxer, Floor, DOT 381.687-034, available at 1991 WL 673262 (Jan. 1, 2016).  With respect to "tasting/smelling," "moving mechanical parts," and "toxic caustic chemicals," the DOT indicates such "[a]ctivity or condition does not exist" for this job.  Id.

A cleaner operator (alternatively referred to in the DOT as "sweeper-cleaner, industrial," "power-cleaner operator," and "vacuum-cleaner operator"):

> Drives industrial vacuum cleaner through designated areas, such as factory aisles and warehouses, to collect scrap, dirt, and other refuse.  Empties trash collecting box or bag at end of each shift. May sift refuse to recover usable materials, such as screws, metal scrap, or machine parts. May clean machine, using rags and vacuum cleaner. May refuel machine and lubricate parts. May hand sweep areas inaccessible to machine and pick up scrap.

Sweeper-cleaner, Industrial, DOT 389.683-010, available at 1991 WL 673279 (Jan. 1, 2016).  With respect to "tasting/smelling," "moving mechanical parts," and "toxic caustic chemicals," the DOT indicates such "[a]ctivity or condition does not exist" for this job.  Id.

Here, the DOT is not silent with respect to the conditions Plaintiff may only tolerate "occasionally"—i.e., exposure to irritants such as fumes, odors, dust, gases, and chemicals, and moving mechanical parts (AR 19–20); therefore, there is no "gap" of information in the record to create an apparent conflict.   See Zavalin, 778 F.3d at 846.  Rather, both the floor waxer and cleaner operator jobs indicate that the conditions of "tasting/smelling," "moving mechanical parts," and "toxic caustic chemicals" do not exist for these jobs.  In sum, the DOT's descriptions for these jobs do not include activities a claimant with Plaintiff's RFC limitations is precluded from doing, Martinez, 2015 WL 5231973, at *4; accordingly, there is no obvious conflict

between the DOT and the VE's testimony with respect to the floor waxer and cleaner operator jobs.

On this record, Plaintiff's argument that these jobs will "obviously" require significant exposure to fumes, odors, dusts, and chemicals, and that the floor waxer will be required to handle moving machinery (ECF No. 16 at 10) is unpersuasive.  Plaintiff's argument appears to be based on his own lay opinion and speculation, which does not outweigh the plain language of the DOT or the VE's expertise, neither of which Plaintiff challenged at the hearing.  Further, Plaintiff's argument is conclusory, as no evidence has been presented in support of this new argument.  Without more, Plaintiff's conclusory argument is unpersuasive.  Accordingly, the Court concludes the ALJ had no further duty to reconcile the purported conflict, and any error was harmless.  Gutierrez v. Colvin, 844 F.3d 804, 807–08 (9th Cir. 2016).

**b.      The ALJ Properly Resolved Any Conflict at the Hearing**

Furthermore, the hearing transcript indicates the ALJ did resolve any apparent conflict.  Importantly, the VE had reviewed Plaintiff's record, heard his testimony, and was aware of the specific limitations in the RFC when she testified that a hypothetical person with Plaintiff's RFC could perform the identified jobs.  (See AR 48.)  More specifically, at the hearing, the ALJ presented a hypothetical RFC that included limitations to occasional exposure to irritants such as fumes, odors, dust, and gasses; occasional exposure to poorly ventilated areas; occasional exposure to chemicals; and occasional exposure to moving mechanical parts, among other limitations.  (Id.)  Based on the presented hypothetical, the VE testified that medium unskilled jobs available to the described hypothetical person included floor waxer, hand packager, and cleaner operator.  (AR 48–49.)  The ALJ asked the VE if her testimony was consistent with the DOT; she confirmed it was consistent with respect to the aforementioned limitations, and that her testimony with respect to additional limitations not relevant here was based on her training, education, and experience.  (AR 49.)  On this record, the ALJ reasonably relied upon the VE's expertise and testimony.  See Massachi, 486 F.3d at 1152.

**c.      Waiver of Challenge**

Finally, the Court notes Plaintiff's attorney had an opportunity to cross-examine the VE at

the hearing, and did not challenge the VE's credentials or her findings.  (See AR 50.)  Notably, Plaintiff's attorney asked the VE whether changing the hypothetical to include a sit/stand "at will" restriction would affect the jobs, and the VE testified that such a restriction would eliminate all work (id.), but Plaintiff's attorney did not ask any questions about the VE's testimony with respect to the RFC limitations identified by the ALJ (see id.).  Thus, Plaintiff did not challenge the VE's testimony with respect to any apparent conflict with the DOT as to the RFC limitations.  As such, the objection is deemed waived.  Meanel, 172 F.3d at 1115 (holding that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal," and rejecting brand new challenge based on VE testimony)).

In sum, the Court finds the ALJ reasonably relied on the VE's testimony at step five to find Plaintiff could perform other work.

**VI.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security (ECF No. 16) is DENIED;

2. Defendant's cross-motion for summary judgment (ECF No. 19) is GRANTED; and

///
///
///
///
///
///
///
///
///

3.  The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Ismael Cavazos, and close this case.

IT IS SO ORDERED.

Dated: __**May 11, 2023**__

<br>

_____
UNITED STATES MAGISTRATE JUDGE